## United States Court of Appeals
### For the Eighth Circuit
_____

No. 18-3673
_____

United States of America

*Plaintiff - Appellee*

v.

Jennifer Michelle Jesse

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: December 13, 2019
Filed: February 14, 2020
_____

Before ERICKSON, MELLOY, and KOBES, Circuit Judges.
_____

MELLOY, Circuit Judge.

Defendant Jennifer Michelle Jesse pleaded guilty to conspiring to distribute 500 grams or more of a mixture and substance containing methamphetamine and 50 grams or more of actual methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841

(b)(1)(A), and 846.  She appeals her sentence, arguing the district court[1] erroneously assigned criminal history points to a prior Iowa conviction.  We affirm.

I.

Jesse's arguments focus on Iowa state court proceedings surrounding a revocation of parole in July 2003.  Given the nature of her arguments on appeal, we describe those proceedings in detail.

In 2001, Jesse received a two-year suspended sentence and eighteen months' probation for possession of methamphetamine, second offense.  Due to several probation violations and arrests, she spent more than 332 days in custodial or pseudo-custodial settings between December 2001 and April 2003.  She was arrested again in June 2003 for another probation violation and held in county jail.  On the morning of July 24, 2003, an Iowa state court judge imposed a revocation sentence of an indeterminate term not to exceed two years' incarceration and ordered Jesse committed to the custody of the Director of the Iowa Department of Corrections.

In Iowa, offenders often serve less than the maximum permissible term of their indeterminate sentences.  In addition, the Iowa Department of Corrections had notified attorneys prior to July 2003 that, if a defendant's creditable time served would make further incarceration unlikely, the defendant should not be transferred to the Department of Corrections for processing.  Knowing this, and anticipating a two-year sentence, Jesse's attorney had consulted with the Department of Corrections prior to Jesse's July 2003 probation revocation hearing.  Department of Corrections personnel informed Jesse's attorney that Jesse would fully serve her two-year sentence in no more than 332 days.  In addition, based on her time in custodial or pseudo-custodial settings during her probation, she had already served more than that

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

amount of time. In fact, the Department of Corrections advised Jesse's counsel that she should not be transported to the Iowa Medical and Classification Center and that, instead, counsel should apply to the state court for an order discharging Jesse's sentence.

Based on the foregoing, Jesse's attorney filed a motion on the afternoon of July 24, 2003, seeking an order discharging Jesse's newly imposed sentence as having been served. The state did not oppose the motion, and on July 25, the state court issued an order granting the motion. The state court's July 25 order stated, in part:

> This matter comes before the Court upon the defendant's application for an Order discharging her from her prison sentence. According to the guidelines used by the Iowa Medical and Classification Center to calculate sentences and compute earned time credit, the defendant has discharged the period of incarceration imposed in this matter.
>
> IT IS THEREFORE ORDERED that the defendant's prison sentence is discharged.
> IT IS FURTHER ORDERED that the Court's previous Order directing the Story County Sheriff to transport the defendant is vacated.
> IT IS FURTHER ORDERED that the defendant be released from the custody of the Story County Sheriff.

At sentencing for the current, federal offense, Jesse and the government disagreed as to whether her July 2003 sentence was a sentence for more than one year and one month. This distinction mattered because, pursuant to U.S.S.G. §§ 4A1.1(a) & 4A1.2(e)(1), a defendant receives three criminal-history points for a sentence greater than one year and one month if imposed within fifteen years of the instant offense. In contrast, a sentence less than one year and one month generally is not counted for criminal history purposes if imposed more than ten years prior to the instant offense. Id. § 4A1.2(e)(2)–(3). Given the timing of her current offense and her 2003 Iowa sentence, and given the fact that three criminal history points would

-3-

move Jesse from criminal history category I to category II, the fighting question became how to characterize the length of her 2003 sentence.

Recognizing that the sentencing guidelines as to criminal history points focus upon the length of sentences imposed rather the length of time actually served, Jesse argued the July 25 order rather than the July 24 order reflects her sentence. In Jesse's words, the July 25 order "blew up" the July 24 sentencing order. In support of her position, Jesse argued the state court judge lacked authority to make time-served determinations such that the July 25 order must be interpreted as a resentencing. The district court rejected Jesse's argument, found the sentence imposed was two years, and assigned criminal history points accordingly. This resulted in an advisory range of 188 to 235 months. Applying the factors of 18 U.S.C. § 3553(a), the district court indicated Jesse's criminal activity warranted a mid-range sentence but her tragic personal history warranted a downward variance. The district court imposed a sentence of 175 months. Jesse appeals.

II.

We review application of the sentencing guidelines de novo and underlying factual determinations for clear error. United States v. Rutherford, 599 F.3d 817, 820 (8th Cir. 2010). Here, while the parties dispute the legal effects of the earlier state court orders, there is no dispute as to their contents. As such, our review is de novo.

U.S.S.G. §§ 4A1.1, 4A1.2, and comments for these sections make clear that criminal history points are scored based on the sentences imposed and not on time actually served. In United States v. Drake, 942 F.2d 517 (8th Cir. 1991), and United States v. Urbizu, 4 F.3d 636 (8th Cir. 1993), we clarified that courts are to rely on the judgment imposing sentence, rather than evidence of time actually served or other evidence describing the sentence, when determining how to score criminal history points.

In Drake, a defendant previously had received a sentence of 78 days' imprisonment as reflected in a state court judgment. That defendant offered the federal court an affidavit from the state sentencing judge who stated he would have imposed a sentence of only 20 days had the defendant not already spent 78 days in pre-trial confinement. Our court rejected the argument that the sentence should be considered 20 days rather than 78 days, holding, "the Guidelines require the court to look to the plain wording of the actual sentence imposed . . . [and] the most authoritative record of the prior sentence is the state court judgment, not the state court judge's affidavit stating the sentence he would have imposed." 942 F.2d at 518; see also id. ("[T]he length of a sentence of imprisonment is the stated maximum. That is, criminal history points are based on the sentence pronounced, not the length of time actually served." (quoting U.S.S.G. § 4A1.2(b) cmt. n.2)).

In Urbizu, rather than addressing the length of a sentence, we were asked to determine whether a prior federal proceeding had resulted in a qualifying "prior sentence" at all. 4 F.3d at 638 ("To qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence . . . ." (quoting U.S.S.G. § 4A1.2 cmt. n. 2)). There, the prior proceeding had resulted in an order that the defendant serve time in a "jail type institution." Id. at 639. The defendant introduced evidence describing the facility where he actually served his sentence as something less restrictive than "imprisonment." Id. at 638. We rejected the defendant's attempt to characterize his punishment as something less than imprisonment, holding that "a rule that relies on the language used in the sentencing court's judgment will better promote the purposes of Chapter 4 of the Sentencing Guidelines." Id. at 639. We concluded:

> Under this approach, a defendant's guideline range will more likely reflect the "defendant's record of past criminal conduct," rather than the vagaries of the executive branch's implementation of his sentence, which may depend on peculiar circumstances, the availability of prison space, or perhaps the discretion of a Bureau of Prisons designator who

equates a particular halfway house with a "jail type institution." Furthermore, we believe judicial efficiency is promoted and the need for additional factfinding is diminished when a district court can rely on a prior court's written judgment to determine the nature of a defendant's prior sentence.

Id. (citation omitted).

Here, Jesse acknowledges this authority, but argues her case is distinguishable. According to Jesse, the judgment that actually matters is not the state court's July 24, 2003 pronouncement of sentence, but the July 25 order. She characterizes the latter order as imposing a sentence shorter than one year and one month.

The 2003 state court orders cannot bear Jesse's interpretation. She received her sentence on July 24 and that same day sought an order "discharging" her sentence. With the acquiescence of the prosecutor and at the advice of the Department of Corrections (as communicated by Jesse's own counsel), the state court judge entered an order discharging her sentence. The state court expressly vacated that part of its earlier order regarding Jesse's transport to the Department of Corrections, but did not vacate its previously imposed sentence. It is plain to us that the state court judge did not believe himself to be amending, retracting, or replacing the sentence he had imposed the prior day. The sentence discharged was the sentence previously imposed. The difference between the maximum permissible time of imprisonment on that indeterminate sentence (two years) and the lesser period Jesse was deemed to have served reflects what we in Urbizu described as "the vagaries of the executive branch's implementation of [her] sentence." 4 F.3d at 639.

We affirm the judgment of the district court.

_____